STATE OF MAINE                                    SUPERIOR COURT
AROOSTOOK, ss.                                      CIVIL ACTION
                                          DOCKET NO. CARSC-RE-16-39


* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *


JPMORGAN CHASE BANK, N.A.
           PLAINTIFF
v.

DARRIN J. WARD A/K/A DARRIN WARD
           DEFENDANT

AND

CAMDEN NATIONAL BANK F/K/A THE
BANK OF MAINE F/K/A GARDINER
SAVINGS INSTITUTION, FSB
           PARTY IN INTEREST


* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *


## JUDGMENT OF FORECLOSURE AND SALE
## TITLE TO REAL ESTATE IS INVOLVED

42 White Road, Presque Isle, Maine 04769
Aroostook County - Southern Registry of Deeds Book 2645, Page 5

Upon notice and after trial, the Court finds as follows: ✗

1.     The Plaintiff is the owner of a certain promissory note in the original principal amount of $62,200.00, given by Darrin J. Ward a/k/a Darrin Ward to Fleet Real Estate Funding Corp. on January 4, 1994 (the "Note"). Plaintiff is also the owner and mortgagee of record of a mortgage recorded in the Aroostook County - Southern Registry of Deeds in Book 2645, Page 5 (the "Mortgage"), affecting real property located at 42 White Road, Presque Isle, Maine 04769 more particularly described in the legal description attached to the Mortgage (the "Premises").

2.     The Defendant has breached the conditions of the Mortgage as a result of a default on the Note secured thereby.

*✗ See also Detailed Findings Decision + Order Denying Plaintiff's Complaint for Foreclosure dated April 26 2018*

3. Mediation has been completed in accordance with 14 M.R.S. § 6321-A(9), as evidenced by the Mediator's Final Report filed with the Court on August 24, 2016.

4. As of January 3, 2018, the following amounts, exclusive of fees and costs for preparation for and attendance at trial, are owed to the Plaintiff under the terms of the Note and Mortgage:

| | |
|---|---:|
| Principal Balance | $41,118.22 |
| Accrued Interest | $18,342.29 |
| Escrow Advance | $19,066.55 |
| Appraisal Fees | $78.00 |
| Property Inspection Fees | $449.40 |
| Bankruptcy Fees & Costs | $700.00 |
| Attorney's Fees and Costs | $5,060.00 |
| Total | $84,814.46 |

Additional pre-judgment interest is accruing and post-judgment interest will accrue at a rate of 5.75% per annum in accordance with the Note and § 1602-B. Plaintiff has foregone any right to a higher interest rate that may be allowable under 14 M.R.S. § 1602-C. Additional attorney's fees, real estate taxes, costs and amounts advanced to protect the security of the Mortgage may continue to accrue through the date of redemption or sale and the completion of these proceedings.

5. The order of priority of any party appearing in this action is as follows:

First Priority: The Mortgage held by JPMorgan Chase Bank, N.A. recorded in the Aroostook County - Southern Registry of Deeds in Book 2645, Page 5. The amount due the Plaintiff is as set forth above.

Second Priority: Darrin J. Ward a/k/a Darrin Ward.

6. The following parties were named in this action but did not answer or otherwise appear:

Camden National Bank f/k/a The Bank of Maine f/k/a Gardiner Savings Institution, FSB, by virtue of a UCC financing statement recorded March 22, 2007 in Book 4414, Page 131.

7. No deficiency is claimed by the Plaintiff against Darrin J. Ward a/k/a Darrin Ward due to the discharge entered in the Defendant's bankruptcy case, District of Maine (Bangor) Petition No. 10-11079.

8. There are no public utility easements affected by this action.

9. The names and addresses (if known) of all parties to this action and their counsel of record are identified as follows:

a. JPMorgan Chase Bank, N.A.
7255 Baymeadows Way
Jacksonville, FL 32256

Counsel: Leonard F. Morley, Jr., Esq. #3856
William B. Jordan, Esq. #461
Robert L. Jackson, Esq. #4496
Shapiro & Morley, LLC
707 Sable Oaks Dr., Suite 250
South Portland, Maine 04106
(207) 775-6223

b. Darrin J. Ward a/k/a Darrin Ward
42 White Road
P.O. Box 1631
Presque Isle, ME 04769

Counsel: Eugene J. McLaughlin, Jr., Esq.
93 State Street, Suite B
P.O. Box 1631
Presque Isle, ME 04769

c. Camden National Bank f/k/a The Bank of Maine f/k/a
Gardiner Savings Institution, FSB
2 Elm Street
Camden, ME 04843

Counsel: Unknown

10. The docket number for this action is CARSC-RE-16-39.

11. All parties have received notice of these proceedings in accordance with the applicable provisions of the Maine Rules of Civil Procedure and any order of this Court.

IT IS THEREFORE ORDERED AND ADJUDGED that:

a. Judgment of Foreclosure and Sale is hereby entered in favor of JPMorgan Chase Bank, N.A. If Darrin J. Ward a/k/a Darrin Ward does not pay to the Plaintiff, its successors and assigns, the amount of the Plaintiff's

total claim due as set forth above within the statutory 90-day period of redemption established by 14 M.R.S. § 6322, then JPMorgan Chase Bank, N.A., its successors and assigns, shall sell the Premises pursuant to 14 M.R.S. § 6321 et seq., and shall disburse the proceeds of the sale, after deducting the expenses thereof, in the following order:

First, to JPMorgan Chase Bank, N.A., its successors and assigns, as set forth above;

Second, the surplus proceeds, if any, to Darrin J. Ward a/k/a Darrin Ward in accordance with 14 M.R.S. § 6324.

b. No writ of execution for any deficiency shall issue against Darrin J. Ward a/k/a Darrin Ward.

c. All remaining rights of the Defendant to possession shall terminate upon expiration of the statutory ninety (90) day redemption period. If Defendant has not redeemed the mortgage by that date, Defendant is ordered to vacate the real estate at that time, and a Writ of Possession shall issue to the Plaintiff for possession of the real property upon application for the same.

d. The Court specifically finds that there is no just reason for delay of the entry of final judgment for the relief requested in Plaintiff's complaint, and the Clerk is directed to enter this Order as a final judgment pursuant to Rule 54.

e. If an appeal is not filed and the Clerk has so certified, JPMorgan Chase Bank, N.A. shall be responsible for recording an attested copy of this judgment in the Aroostook County - Southern Registry of Deeds and paying the recording fee.

f. Pursuant to Rule 79(a) this Order may be incorporated by reference on the Civil Docket. *Also incorporated herein are the Defendant's Proposed Order and Order Regarding Premxxx Coyxxxx to Execution Doyxrr And to Sxx. XXX*

Dated: _Nov 26, 2018_

_____
Justice, Superior Court

Entered On:

ENTERED ON THE DOCKET 5/4/18

## CERTIFICATION OF CLERK PURSUANT TO 14 M.R.S. § 2401(3) (F)

Pursuant to 14 M.R.S. § 2401(3)(F), it is hereby certified that no notice of appeal of the Judgment of Foreclosure and Sale in this matter was filed with the Clerk of Court in this action within the appeal period following entry of judgment or that the final judgment has been entered after remand following an appeal.

Dated: _____

_____
Clerk of Court

11-014110

STATE OF MAINE                                    MAINE SUPERIOR COURT
AROOSTOOK, SS.                                      LOCATION: CARIBOU
                                                         CIVIL ACTION
                                         DOCKET NO:  CARSC-RE-16-39


JPMORGAN CHASE BANK, N.A.
                    Plaintiff
                                                      DETAILED
                                                      FINDINGS, DECISION
                                                      AND ORDER
                                                      REGARDING
                                                      PLAINTIFF'S COMPLAINT
                                                      FOR FORECLOSURE

           VS.


DARRIN J. WARD, A/K/A DARRIN WARD
                    Defendant
And

CAMDEN NATIONAL BANK F/K/A THE
BANK OF MAINE F/K/A GARDINER
SAVINGS INSTITUTION, FSB
                    Party in Interest


TITLE TO REAL ESTATE IS INVOLVED



On or about April 7, 2016 Maine State Housing Authority filed a civil complaint against Darrin

Ward (hereafter Defendant) seeking foreclosure of mortgage pursuant to 14 M.R.S. §6322

regarding property at 42 White Road, Presque Isle, Maine.[1] Defendant timely filed an answer to

the complaint, and also brought a number of counterclaims. An Amended Complaint was filed

on July 11, 2016 correcting the legal name of the Party in Interest. On April 24, 2017 all of

---

[1] This is the second foreclosure action initiated by Maine State Housing Authority, the prior
action being dismissed without prejudice.

Defendant's counterclaims were dismissed with prejudice due to Defendant's failure to comply with a previously issued discovery order. On October 18, 2017 JPMorgan Chase Bank, N.A. (hereafter Bank) was substituted as Plaintiff pursuant to Plaintiff's unopposed motion. A bench trial on the Bank's Complaint for Foreclosure was held January 3, 2018.

At trial the bank proffered Peter Katsikas as its witness qualified to testify about the business records of the various entities involved. M.R.Evid.803(6); *Beneficial Maine v. Carter*, 2011 ME 77, *Key Bank Nat'l Ass'n v. Estate of Quint*, 2017 ME 237. [2] At trial the Bank offered the following exhibits which were admitted[3]:

1. Copy of Promissory Note dated January 4, 1994 from Defendant to Lender, Fleet Real Estate Funding Corp, and two Allonges which endorse the note to Maine State Housing Authority and then to JPMorgan Chase Bank, N.A.[4].;

2. Mortgage dated January 4, 1994 from Defendant to Fleet Real Estate Funding Corp regarding property at 42 White Road, Presque Isle, Maine and recorded at SDARD Bk. 2645, p. 5;

3. Assignment of Mortgage dated April 1, 1994 and recorded at SDARD Bk. 2681, p. 73 from Fleet Real Estate Funding Corp to Maine State Housing Authority regarding the aforesaid mortgage recorded at SDARD Bk. 2645, p. 5;

4. Confirmatory Assignment of Mortgage dated August 6, 2015 and recorded at SDARD Bk.

---

[2] Based on his experience and training with both JPMorgan Chase Bank and Washington Mutual which acquired Fleet Real Estate Funding Corp., and his direct knowledge of the Bank's and Washington Mutual's operations, the Court finds Mr. Katsikas to be a qualified witness. See Section 2. Breach *infra* for the Court's detailed findings.

[3] Exhibits 3,4 and 6 were admitted *de bene* and subject to the objections preserved by Defendant's counsel.

[4] The original Promissory Note was provided at trial for inspection but by agreement was retained by the Bank.

5462, p. 167 from JPMorgan Chase Bank, National Association as Attorney in Fact for the FDIC as Receiver of Washington Mutual Bank f/k/a Washington Mutual Bank FA successor in interest to Washington Mutual Home Loans, Inc., s/b/m to Fleet Mortgage Corp., f/k/a Fleet Real Estate Funding Corp to Maine State Housing Authority regarding the aforesaid mortgage recorded at SDARD Bk. 2645, p. 5;

5. Assignment of Mortgage dated August 31, 2016 and recorded at SADARD Bk. 5584, p. 269 from Maine State Housing Authority to JPMorgan Chase Bank N.A regarding the aforesaid mortgage recorded at SDARD Bk. 2645, p. 5;

6. Notice of Right to Cure Letter dated February 18, 2016 from Shapiro & Morley, LLC o/b/o Maine State Housing Authority to Defendant;

7. Itemization of Amounts Due; and

8. Payment History

Also admitted into evidence are two Affidavits of Robert L. Jackson, Esq. both dated January 2, 2018, one submitting Status Report Pursuant to Servicemembers Civil Relief Act regarding the Defendant, and the second itemizing attorney fees.

At the conclusion of the proceedings the evidence was closed and the Court set a briefing schedule for parties' counsel to submit written arguments. The court has received and reviewed written arguments from Plaintiff dated March 14, 2018 and from the Defendant dated February 16, 2018.

3

## DISCUSSION

For a judgment of foreclosure to be granted, there are eight required elements:

- the existence of the mortgage, including the book and page number of the mortgage, and an adequate description of the mortgaged premises, including the street address, if any;

- properly presented proof of ownership of the mortgage note and [evidence of the mortgage note and] the mortgage, including all assignments and endorsements of the note and the mortgage;

- a breach of condition in the mortgage;

- the amount due on the mortgage note, including any reasonable attorney fees and court costs;

- the order of priority and any amounts that may be due to other parties in interest, including any public utility easements;

- evidence of properly served notice of default and mortgagor's right to cure in compliance with statutory requirements;

- after January 1, 2010, proof of completed mediation (or waiver or default of mediation), when required, pursuant to the statewide foreclosure mediation program rules; and

- if the homeowner has not appeared in the proceeding, a statement, with a supporting affidavit, of whether or not the defendant is in military service in accordance with the Servicemembers Civil Relief Act.

4

*Chase Home Finance LLC v. Higgins*, 2009 ME 136, ¶11.

1.Ownership and Existence of Note and Mortgage

In this case, the Bank has properly presented proof of its actual possession and ownership of the promissory note, and the existence of a mortgage. (See Exhibits 1 and 2; *Bank of America, N.A. v. Greenleaf*, 2014 ME 89, ¶21). The Bank is in actual possession of the original promissory note to Fleet Real Estate Funding Corp.. And the allonges effectively endorse the note to Maine State Housing Authority and then to the Bank. Defendant however asserts that the Assignment of Mortgages are improper and ineffective to legally assign the mortgage to the Bank.

Defendant points out that the Assignment of Mortgage recorded at SDARD Bk. 2681, p. 73 supposedly signed on April 1, 1994 (Ex. 3) has an acknowledgment date of March 9, 1994. However, the amendments made to 33 MRSA § 352-Defective Acknowledgments address this issue. (See H.P.888-L.D.1275, An Act to Amend and Remove the Need for Periodic Update of the Laws Governing the Validation of Title Defects, effective Nov. 1, 2017). Section 352 now states:

> A record of a deed or other instrument, including a power of attorney, made for the conveyance of real property, or of any interest in real property, and recorded for at least 2 years in the registry of deeds of the county or district in which the real property is located is valid and enforceable even if:
> - **1. Acknowledgment.** The acknowledgment was incomplete or defective in any respect, no acknowledgment appears in the record of the deed, other instrument or power of attorney or no acknowledgment was taken;

The Assignment of Mortgage recorded at SDARD Bk. 2681, p. 73 has been on record at the Registry of Deeds since May 16, 1994, well over two years. Accepting that the acknowledgment is defective due to it being performed at a date earlier than the execution of the instrument, pursuant to § 352 the instrument is none the less valid and enforceable. Exhibit 3 is therefore admitted into evidence and the Court finds that this assignment effectively conveyed the mortgage to Maine State Housing Authority. The mortgage was then effectively conveyed by Maine State Housing Authority to the Bank by the Assignment of Mortgage recorded at SDARD Bk. 5584, p. 269.(Ex. 5).[5]The Bank has proven it is the owner of both the note and mortgage and therefore has standing to seek a judgment of foreclosure if it can establish the other required elements.

Defendant asserts §352 is unconstitutional. The Court disagrees. The Assignment in dispute was from Fleet to Maine State Housing Authority, and whether or not defective did not impact the Defendant's rights and obligations under the note and mortgage. See *American Republic Insurance Co. v. Superintendent of Insurance*, 647 A.2d 1195, 1197 (Me. 1994). Section 352 has been in existence in some form or another for decades, and serves a legitimate public purpose of curing ministerial type defects in old real estate transfers thereby alleviating unnecessary clouds on title.

---

[5] Also on record recorded at SDARD Bk. 5462, p. 167 is a Confirmatory Assignment of Mortgage to Maine State Housing Authority from the successors of Fleet Real Estate Funding Corp.. (See Ex. 4). At trial, Plaintiff indicated this confirmatory mortgage was prepared and recorded in August of 2015 to address the inconsistent dates in the original assignment, which was prior to the amendment to § 352. However pursuant to either the earlier version or amended version of §352, the defective acknowledgment date is cured. Accordingly, the Court finds this Confirmatory Assignment redundant and therefore need not address that the document was executed via a power of attorney.

6

2.Breach

At trial, the payment history was introduced into evidence. (Ex. 8). The payment history dates back to the loan inception in 1994, and continues through its history of service by Fleet Real Estate Funding Corp, then Washington Mutual which acquired Fleet, and finally JPMorgan Chase Bank. The Bank offered the testimony of Peter Katsikas to introduce this evidence. Mr. Katsikas was employed by Washington Mutual from 2002 until September of 2008 when Washington Mutual went into receivership. At that time, at the direction of the FDIC, JPMorgan Chase Bank took over servicing and management of its assets, including the Defendant's mortgage. Mr Katsikas became an employee of JPMorgan Chase at that same time the assets of Washington Mutual became serviced by JPMorganChase. In other words, Mr. Katsikas was an employee with the entity servicing Defendant's mortgage from 2002 to date.

It is worth addressing further that this foreclosure is not of a mortgage sold or assigned in the traditional sense. The mortgage was originated by Fleet as a Maine State Housing Authority Home Mortgage Program. (Ex. 1and 2). Soon after origination, the mortgage was assigned entirely to Maine State Housing Authority. (Ex. 3). But servicing of the loan remained with Fleet. Fleet, as an entity, was acquired by Washington Mutual and as of 1998 servicing of the loan was done by Washington Mutual. (See Ex. 8). In other words, the mortgage was not sold or assigned to Washington Mutual, but rather Fleet as an entity was. Washington Mutual then went into receivership. At the direction of the FDIC, JPMorganChase assumed servicing responsibilities of the assets, and as Mr. Katsicas testified, employees of Washington Mutual

7

became employees of JPMorganChase. There was no actual transfer, break or interruption in the servicing of the mortgage

Moving forward, the Law Court has recently provided additional guidance for the admissibility of records pursuant to the Business Record Exception. A witness may lay a proper foundation to admit integrated business records if the witness's testimony satisfies the requirements of both M.R. Evid. 803(6) and *Beneficial Me. Inc. v. Carter,* 2011 ME 77. *Key Bank Nat'l Ass'n v. Estate of Quint,* 2017 ME 237, ¶ 16. Business records are admissible pursuant to M.R.Evid. 803(6) if:

> (A) The record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) The record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) Making the record was a regular practice of that activity;
>
> (D) All these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11), Rule 902(12) or with a statute permitting certification; and
>
> (E) Neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness. *Id.* at ¶14.

A qualified witness is one who was intimately involved in the daily operation of the business and whose testimony showed the firsthand nature of his knowledge. The qualified witness "need not be an employee of the record's creator." For example, "if the records [from the producing business] were received and integrated into another business's records and were relied upon in that business's day-to-day operations, an employee of the receiving business may be a qualified witness. In such instances, the business records will be admissible "if the foundational evidence from the receiving entity's employee is adequate to demonstrate that the employee had sufficient knowledge

8

of *both businesses'* regular practices to demonstrate the reliability and trustworthiness of the information. *Id.* at ¶15.

The records are admissible pursuant to *Carter* if:

- the producer of the record at issue employed regular business practices for creating and maintaining the records that were sufficiently accepted by the receiving business to allow reliance on the records by the receiving business;

- the producer of the record at issue employed regular business practices for transmitting them to the receiving business;

- by manual or electronic processes, the receiving business integrated the records into its own records and maintained them through regular business processes;

- the record at issue was, in fact, among the receiving business's own records; and

- the receiving business relied on these records in its day-to-day operations. *Id.* at ¶ 16.

Mr. Katsikas demonstrated a sufficient knowledge about the record keeping processes and the various systems utilized by both Washington Mutual and JPMorgan Chase.[6] Mr. Katsikas' testimony established that the record keeping of both Washington Mutual and JPMorgan Chase Bank was conducted pursuant to its regular business practice, and that entries into the records were done in the course of regular business activities, by someone with personal knowledge and done at the time of the record keeping event. With respect to the Payment History specifically, Mr. Katsicas' was able to explain how it was created and maintained, stored and then printed for use at trial. Mr. Katsicas also demonstrated a solid understanding of how to interpret the data and

---

[6] Although Mr. Katsicas was never employed by Fleet, this does not impair his qualifications; as previously discussed, Washington Mutual acquired and was the successor to Fleet as an entity. A close review of the Payment History (Ex. 8) shows that the style or format of the records was essentially unchanged when Washington Mutual became the successor to Fleet; all that changed was the name.

information in the Payment History. See *HSBC Mort. Servs. V. Murphy*, 2011 ME 59, ¶ 10. Based upon Mr Katsicas' testimony and the Court's review of the document, there is no lack of trustworthiness indicated in either the source of information or method in which it was prepared. *Id.* The Payment History is reliable and trustworthy. The record and testimony establish that the Defendant last made a payment in July of 2010, which actually was applied to the last due payment of April, 2010, and that the Defendant has not made any payments since that time. Accordingly, Exhibit 8 is admitted into evidence over Defendant's objection. The Bank has proven the Defendant caused breach of the note and mortgage by failing to make the required loan payments.

3. Amount Due

Exhibit 7 has been admitted as a summary of the amount due. Again, Mr. Katsicas provided testimony establishing the foundation and trustworthiness of this document. Based on the Payment History and testimony at trial, as of January 3, 2018 the amount due on the Note and Mortgage is $79,754.46. In addition, Attorney Jackson's Affidavit Concerning Attorney's Fees indicates the Bank has incurred $4680 in fees and $380.00 in disbursements, which amounts are supported by the itemization in the affidavit. See *HSBC Bank USA, N.A. v. Gabay*, 2011 ME 101, ¶ 27. The total amount due on the mortgage is $84,814.46.

10

4.Order of Priority and Amount Due Other Parties

The Bank of Maine, f/k/a Gardiner Savings Institution, now known as Camden National Bank was served on April 14, 2016 as a party in Interest, but did not answer or otherwise appear, and therefore no amount is due.

5.Notice of Default

At trial the Bank introduced the Notice of Right to Cure sent by Shapiro & Morley o/b/o Maine State Housing Authority to the Defendant dated February 18, 2016, (Ex. 6). The notice appears to have been sent with a certificate of mailing to both the Defendant and Defendant's counsel. Mr. Katsikas' provided limited testimony regarding the issuance and service of the notice, but his testimony did not go into detail explaining how the document was prepared. See *Deutsche Bank National Trust Company v. Eddins,* 2018 ME 47. And at trial Defendant did object to the admissibility of the Notice based on "…it not satisfying Beneficial v. Carter..". However, as Plaintiff's counsel reminded the Court at trial, by an Order dated April 24, 2017 as a sanction for a discovery violation Defendant was barred from presenting any affirmative defenses at trial.[7]Allegations of non-compliance with the notice provisions of foreclosure statutes is an affirmative defense, and the party raising the defense has the burden of proving its applicability. *Bar Harbor Bank & Trust v. Woods at Moody, LLC,* 2009 ME 62, ¶ 13; citing *ABN AMRO Mortg. Group v. Willis,* 2003 ME 98, ¶ 5. Procedurally, and by order of this Court, Defendant was barred from raising affirmative defenses, such as notice. Although Mr. Katsicas did not

---

[7] The Court notes that at trial it may have misspoke, when it suggested proper issuance of the Notice of Default was one of the items of proof for the Bank to establish. As will be discussed herein, contention that notice was deficient is an affirmative defense which must be properly raised.

provide details related to the preparation of the Notice (Ex. 6), but the Court declines to hold the Bank to the newly established requirements of *Deutsche Bank v. Eddins*. Again, there was no affirmative defense before the Court. Had deficiencies with the Notice been properly laid as a potential issue via affirmative defenses, then the Bank and its counsel would have been on notice to address and litigate the issue at trial.[8]

Upon reviewing the Notice of Right to Cure (Ex.6), the Court finds the content of the notice complies with 14 M.R.S. § 6111. The Notice provides the 35 day notice required by sub-section 1, it contains the information required under section 1-A, and it was issued in the manner required by sub-section 3(B), by first class mail with a certificate of mailing. 14 M.R.S. §6111(1), (1-A), (3). Plaintiff's Exhibit 6 is admitted into evidence over Defendant's objection.

Defendant further asserts the Notice is defective because the 35th day falls on a Sunday. As previously discussed the content of the Notice complies with Section 6111. The Notice properly indicated the Defendant had 35 days after the date the notice was given to cure the default. The law does not require entities to time their notices such that deadlines to cure not fall on weekends or holidays. The Notice was sent by certified mail on February 18, 2016. Pursuant to Section

---

[8] *Deutsche Bank v. Eddins* was decided by the Law Court after trial of this case. A reading of *Deutsche Bank v. Eddins* suggests that for Notice of Default and Right to Cure letters prepared and issued by counsel such as in this case, plaintiffs will need testimony from someone with counsel's firm or the bank that has either possession of the document or is intimately familiar with the business practices of the law firm utilized to generate the document. See *Deutsche Bank v. Eddins*, ¶12 – 14. Mr. Katsikas' testimony did not meet those requirements; in-fact he was not even asked any questions related to preparation of the document. But again, at time of trial this issue was not properly raised as an affirmative defense.

6111(3)(B), the Notice is presumed to have been given to Defendant on the third calendar day after the certified mailing, or February 21, 2016. The 35th day after would have fallen on Sunday, March 27, 2016. So, by Rule 6(a) of the Maine Rules of Civil Procedure, the last day to have cured would, by rule, be extended to Monday, March 28, 2016.

6.Mediation

The requirement of mediation was satisfied in accordance with 14 M.R.S. §6321-A(9) per the Mediator's Report dated August 24, 2016.

7. Military Service

The Defendant appeared for trial, although evidence was also introduced that the Defendant is not in military service.

The Court therefore finds that the Bank has established by a preponderance of the evidence that it is entitled to Judgment of Foreclosure and Sale. Judgement of Foreclosure and Sale shall be issued pursuant to the proposed judgment provided by Plaintiff, and that these findings, decision and order shall be incorporated therein. Pursuant to Rule 79(a) this order shall be incorporated by reference in the Civil Docket.

Dated: _____, 2018

_____
Justice, Superior Court

13